AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>a black iPhone as described in Attachment A-1, currently<br>located at 2619 Northwest Industrial Street, Suite B4, in<br>Portland, Oregon | )<br>)<br>)<br>)<br>)<br>)    Case No.    3:20-mc-00385 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

a black iPhone currently located at 2619 Northwest Industrial Street, Suite B4, in Portland, Oregon, as described in Attachment A-1 hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____

Colby Panter, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone at __4:59__ p.m. _____ *(specify reliable electronic means)*.

Date: __April 28, 2020__

City and state: __Portland, Oregon__

_Youlee Yim You_
*Judge's signature*

Youlee Yim You, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A-1**

**Property to Be Searched**

The property to be searched is currently location on the premises of the Portland Police Bureau Property Evidence Division, located at 2619 Northwest Industrial Street, Suite B4, Portland, OR 97210, and is described as follows:

(a) One black iPhone cellular telephone (cellphone) with cracked glass back, seized from the person of Leslie Delroy Thompson,

**ATTACHMENT B**

**Items to Be Seized**

1.       All records on the Device(s) described in **Attachment A1** and **A2** that relate to violations of Title 18, United States Code, Section 922(g)(1), felon in possession of a firearm or ammunition, by Leslie Delroy THOMPSON since December 1st, 2019, including:

a.       Contact lists/phone book including names and numbers of customers and associates and related identifying information.

b.       Photographs and videos of firearms, firearms possession, sources of firearm supply, and related identifying information.

c.       All incoming and outgoing messages, to include SMS and MMS text messages and messages from cellphone applications, related to firearms possession and related identifying information.

d.       Lists of weapons suppliers, ammunition suppliers, and related identifying information.

e.       Types, amounts, and prices of weapons, ammunition, as well as dates, places, and amounts of specific transactions.

f.       Information related to sources of weapons (including names, addresses, phone numbers, or any other identifying information).

g.       Information recording THOMPSON'S schedule or travel from December 1st, 2019, to the present.

h.       Bank records, checks, credit card bills, account information, and other financial records.

**Page 1 – Attachment B**                          **USAO Version Rev. October 2015**

i.      Communications to include all incoming and outgoing messages, to include SMS and MMS text messages and messages from cellphone applications, photographs, and videos about weapons to include handguns, as well as ammunition, receipts, and bills of sale, as they relate to weapons-related messages.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Records evidencing the use of the Internet, including:

a.      Records of Internet Protocol addresses used.

b.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

c.      Records of data storage accounts and use of data storage accounts.

4.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5.      The examination of the Device(s) may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device(s) to human inspection in order to determine whether it is evidence described by the warrant.

6.      The initial examination of the Device(s) will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.  The government shall complete this review within 180 days of the date of execution of the warrant.  If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

7.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Device(s) or images do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Device(s) do not contain any data falling within the ambit of the warrant, the government will return the Device(s) to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

9.      The government may retain the Device(s) as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device(s) and/or the data contained therein.

10.     The government will retain a forensic image of the Device(s) for a number of

**Page 3 – Attachment B**                          **USAO Version Rev. October 2015**

reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

DISTRICT OF OREGON, ss:          AFFIDAVIT OF COLBY J. PANTER

**Affidavit in Support of an Application under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Data**

I, Colby J. Panter, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am currently employed by the City of Portland, Bureau of Police, and have been a police officer in the State of Oregon for over twenty-two (22) years.   I am presently assigned to the Metro Gang Task Force (MGTF), which is a FBI-led Safe Streets Task Force, responsible for investigating violent gangs within the greater Portland Metropolitan area.   As an investigator with the Metro Gang Task Force, I have been federally sworn as a Special Deputy United States Marshal and received Special Deputation by the Federal Bureau of Investigation pursuant to Title 28 of the United States Code.   As such, I am empowered under Title 18, United States Code, Sections 3052 and 3053, and Rule 4 of the Federal Rules of Criminal Procedure, to conduct investigations and make arrests for federal criminal offenses, including violations of Title 18, United States Code §922(g)(1) (Firearm Possession Prohibition) and Title 21, United States Code §841(a)(1) of the Drug Abuse Prevention and Control Act of 1970 (distribution and possession with intent to distribute controlled substances).

2.      In addition to my current duties, I am assigned to the Portland Police Bureau's Gang Enforcement Team as a gang investigator and maintained that position for approximately ten years.   My job assignment includes the investigation of gang related crimes which include the investigation of violations of Oregon Revised Statutes (ORS) chapters: 164, 475, 166 and 163.   These violations include illicit drug crimes, assaults, armed robberies, weapons possession, shootings, and prostitution.   As a Gang Enforcement Team Officer, I have ongoing

**Affidavit of Colby Panter**                                                                                          **Page 1**

training by members of the Portland Police Bureau, Department of Public Safety Standards and Training, Western States Information Network, United States Attorney's Office, Multnomah County District Attorney's Office, Federal Bureau of Prisons, Washington State Department of Corrections, Oregon State Department of Corrections and Federal Bureau of Investigation.   I have written more than fifty (50), search warrant affidavits and helped execute at least one-hundred (100), residential search warrants.   During the course of being a patrol officer, Neighborhood Response Team officer, and Gang Enforcement Team officer, and Task Force Officer, I have had numerous conversations with individuals involved in gang related crimes.

       3.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of:

       a.      Black iPhone cellular telephone, hereinafter the "**Device 1**," which is currently stored, in law enforcement possession, at the Portland Police Bureau's Property Evidence Division located at 2619 Northwest Industrial Street, Suite B4, in Portland, Oregon, as described in Attachment A1 which is attached hereto and incorporated herein by this reference, and the extraction from the **Device 1** of certain things described in Attachment B which is also attached hereto and incorporated herein by this reference.

       b.      Black cellular smart phone with black case, hereinafter the "**Device 2**," which is currently stored at Multnomah County Detention Center property room located at: 1120 Southwest 3rd Avenue, Portland, Oregon, as described in Attachment A2 which is attached hereto and incorporated herein by this reference, and the extraction from **Device 2** of certain things described in Attachment B which is also attached hereto and incorporated herein by this reference.

**Affidavit of Colby Panter**                                     **Page 2**

As set forth below, I have probable cause to believe and do believe that the items set forth in Attachment B constitute evidence, contraband, fruits, and instrumentalities of violations of the following offenses: felon in possession of a firearm or ammunition in violation of Title 18, United States Code, Section 922(g)(1)..

4.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.    The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, § 922(g)(1), Felon in Possession of a Firearm (hereinafter the "Target Offenses"), have been committed, are being committed, and will be committed by a Leslie Delroy THOMPSON (hereinafter "THOMPSON").    There is also probable cause to search **Device 1** and **Device 2**, described in Attachments A1 and A2, for evidence, instrumentalities, or contraband of these crimes as further described in Attachments B.

## Statement of Probable Cause

6.    Based on my training, research, and experience, as well as my conversations with other law enforcement personnel, I believe that:

a.    THOMPSON self-admitted membership of the criminal street gang known as the "Kerby Blocc Crips" and that he has the street name/moniker of "Bigga".

**Affidavit of Colby Panter**                                                                                    **Page 3**

THOMPSON admitted affiliation upon his arrest on April 19, 2020, to Multnomah County Jail staff;

b.    THOMPSON, and his gang associates, are known to carry firearms, commit violent acts, and/or engage in drug trafficking;

c.    THOMPSON cannot possess and/or carry a concealed weapon because of his criminal record;

d.    THOMPSON has a criminal history to includes felony convictions for 3 counts of Attempt Assault 1 with a firearm for which he received 91 and 95 month sentences, and Felon in Possession of a Firearm for which he received a 25 month sentence.

7.    On February 14th, 2020, I received information from Desiree Guerra, born April 19, 1995, regarding THOMPSON'S involvement in drug trafficking, weapons possession, prostitution, and a history of domestic violence assaults against Guerra.   Guerra specifically stated that THOMPSON was in possession of at least one firearm.   Guerra related overhearing THOMPSON speak on the phone in January 2020, about possession of a Smith and Wesson firearm.   Guerra related that she observed THOMPSON in possession of a small firearm that THOMPSON concealed in a green Crown Royal liquor bag as well.   Guerra reported that THOMPSON distributes cocaine to various people and associated gang members.   Guerra recounted that THOMPSON possessed approximately 1/5 ounce of cocaine at a time, and would sell 1 gram for $100, one-half gram for $50, and "Dubs" for $20 before reacquiring more cocaine and selling.   The details of Guerra's February report are documented on Portland Police Bureau (PPB) case #20-800382. Guerra has no criminal history.

**Affidavit of Colby Panter**                                                                **Page 4**

8.    Guerra reported THOMPSON possessed two phones utilizing the phone numbers 971-715-8720 for everyday phone calls, and 971-348-9372 for drug dealing calls.   I do not know which phone number correlates with **Device 1** and **Device 2**.

9.    An on-line check for the telephone numbers provided by Guerra, revealed both phones are serviced by the Provider, AT&T Mobility.   Subscriber information related to those two phone numbers reflect the subscriber name as "Leslie Thompson."   Based upon my training and experience, I know it is common for convicted felons involved in violent felonious acts, to utilize multiple cell phones in order to compartmentalize criminal conduct, and minimize the chance of criminal conduct being detected when apprehended by law enforcement.

10.    On February 26, 2020, Guerra recanted her statement.   Guerra reported that THOMPSON was innocent and that she had lied about his criminal involvement.   Based on my training and experience, it is very common for victims of domestic violence and witnesses in gang cases to recant their statements for several reasons, including fear of retribution, manipulation and control.

11.    On March 11, 2020, Guerra reported another assault by THOMPSON that caused Guerra to be hospitalized.   Guerra reported injuries to her arms, face, neck, and legs due to strangulation, fist strikes, slaps and biting during the physical altercation.   Guerra provided photos of the injuries.   Guerra reported THOMPSON possessed a sweater with "something heavy" in it, Guerra believed was a handgun.   Guerra believes she was struck by THOMPSON with a handgun during the assault, but does not specifically remember seeing a handgun during the incident.   Guerra stated that she 'blacked out' during the assault, but due to the extent of her injuries, she believes she was struck by the handgun.   The March 11th, 2020 incident is documented on PPB case #20-83300.

**Affidavit of Colby Panter**                                                      **Page 5**

12.    On March 11, 2020, Guerra reported that the call she made to writer on February 26th, 2020, recanting her February 14th report, was a coerced phone call by THOMPSON. THOMPSON made Guerra make a 3-way phone call so he could listen and record Guerra recant her previous report.   THOMPSON believed recording Guerra, would negate THOMPSON'S future prosecution for any crimes reported by Guerra.   Guerra reported that THOMPSON utilized manipulation and guilt to force her to recant her report, and everything she originally reported on February 14th, 2020, was true.   Based on my training and experience THOMPSON's use of manipulation and guilt to persuade a victim to recant are common in domestic violence relationships.

13.    On April 20, 2020, Portland Police Officer Wyatt initiated a traffic stop of a blue Dodge Charger displaying Oregon license plate 634KLT, in the area of Southeast 122nd Avenue and Southeast Steele Street.   The vehicle made evasive lane changes and turns, but ultimately stopped in front of a residence at 12239 Southeast Steele Street.   THOMPSON was driving the vehicle.   THOMPSON'S driving status was suspended in Oregon Department of Motor Vehicles (DMV), and THOMPSON had an outstanding Parole Violation warrant for his arrest from the Oregon State Parole Board. THOMPSON was subsequently arrested.

14.    Tyrae Danial Hernandez, born July 29, 1993 was in the front passenger seat. Hernandez' driving status was found to be suspended by Officer Wyatt.   Hernandez was asked to exit the vehicle as Officer Wyatt intended to tow the vehicle parked as a hazard, partially blocking the roadway and sidewalk.   Officer Wyatt observed a restaurant to-go bag on the front passenger floorboard of the vehicle, and observed a black pistol in a black holster openly visible in the bag.   Upon further inspection, Officer Wyatt noted what appeared to be a child's sock pulled over the handle of the firearm.   Hernandez was arrested for unlawful possession of

**Affidavit of Colby Panter**                                                                 **Page 6**

weapon.   Hernandez has no criminal record.   However, on January 31, 2019, Hernandez was contacted in a vehicle with a different known gang member.   During the contact, officers recovered a handgun in the door of the vehicle.

15.   Officer Wyatt recovered a Smith and Wesson brand, model SD-40, .40 caliber pistol bearing serial number DUX3791 in a holster from the to-go bag on the front passenger floorboard of the blue Dodge Charger. Photos of the firearm are below.



16.   Officer Wyatt and Portland Police Officer Baldwin interviewed Hernandez after advising her of her constitutional rights.   Hernandez stated that THOMPSON handed her the holster and handgun at the point Officer Wyatt initiated the traffic stop.   Hernandez stated "Yes" when Officer Baldwin told her that he believed she placed the handgun in the bag while THOMPSON drove evasively prior to the traffic stop.

17.   Officer Wyatt noted THOMPSON was in possession of two cellular phones (**Device 1** and **Device 2**) when taken into custody.   Officer Wyatt reported the screen on the black iPhone, **Device 1**, displayed a text message from the phone number (503)404-3931, stating "You have a good night I'm going to bed early I'm tired and going shooting killed my back."

**Affidavit of Colby Panter**                                                                 **Page 7**

Officer Wyatt placed **Device 1** into evidence on Portland Police Bureau property evidence on receipt #A149664.

18.     Officer Wyatt logged **Device 2,** found in THOMPSON'S possession, into "Prisoner's Property," upon booking THOMPSON in to the Multnomah County Jail.

19.     On April 23, 2020, I contacted Multnomah County Jail property, and inquired as to the status of THOMPSON'S property.   Multnomah County Jail property technician advised that a cellular phone, **Device 2**, was currently logged as property of THOMPSON upon his booking on April 20th, 2020 at the Multnomah County Detention Center located at 1120 Southwest 3rd Avenue, Portland, Oregon.   The property technician described **Device 2** as a black cellular smartphone with black case.

20.     I believe that THOMPSON utilizes cellular phones as a means of communication and as a way to document and possibly broadcast his possession of firearms and to facilitate drug trafficking.   I believe that the phones THOMPSON uses also contain relevant information about THOMPSON'S location before, during, and after criminal activity that involves his illegal possession and use of firearms.

21.     I know from my training and experience that persons who possess a firearm illegally, such as convicted felons, will often document their possession in cellular telephone pictures, videos, and text messages.   These pictures, videos and text messages are relevant to the investigation and often provide direct evidence to identify persons unlawfully possessing, transferring, or using such weapons. I also know based on my training and experience that individuals involved in drug trafficking will use their cellular telephones to conduct transactions through phone calls, text messages, photos, videos and applications.   Drug traffickers also will take photos and videos of narcotics and proceeds.

**Affidavit of Colby Panter**                                                                                    **Page 8**

22.     Based upon my training and experience and my knowledge of this investigation, I know **Device 1** and **Device 2**, have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device's first came into my possession.

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     *Wireless telephone*.   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.     *IP address*.   An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.   Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.   Most Internet service providers

**Affidavit of Colby Panter**                                                                **Page 9**

control a range of IP addresses.   Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c.      *Internet*.   The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.      Based on my training and experience, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and can access the internet.   In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

25.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

26.      As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence will be on the Device because, based on my knowledge, training, and experience, I know:

**Affidavit of Colby Panter**                                                                                   **Page 10**

a.      Data on the Device can provide evidence of a file that was once on the Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time.   Further, forensic evidence on a device can show how and when the device was accessed or used.   Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation.   This "timeline" information may tend to either inculpate or exculpate the device user.   Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation.   For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

**Affidavit of Colby Panter**                                                                 **Page 11**

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.   For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

27.      *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Device 1** and **Device 2**, consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

28.      The initial examination of **Device 1** and **Device 2** will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the

warrant.   The government shall complete this review within 180 days of the date of execution of the warrant.   If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

29.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on **Device 1** and/or **Device 2** or images do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

30.      If an examination is conducted, and it is determined that either **Device 1** and/or **Device 2** do not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

31.      The government may retain **Device 1** and **Device 2**, as evidence, fruits, contraband, or an instrumentality of a crime, or to commence forfeiture proceedings against the Device and/or the data contained therein.

32.      The government will retain a forensic image of **Device 1** and **Device 2** for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Affidavit of Colby Panter**                                                        **Page 13**

33.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Conclusion**

34.     Based on the foregoing, I have probable cause to believe, and I do believe, that THOMPSON has committed, is committing, and will be committing the offenses of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g), and that evidence and instrumentalities of that offense, as more fully described in **Attachment B** hereto, are presently contained in **Device 1** and **Device 2**, more fully described above and in Attachment A1 and A2 hereto.   I therefore request that the Court issue the warrant authorizing a search of the **Device 1** and **Device 2**, described in **Attachment A1** and **A2**, for the items listed in **Attachment B**.

35.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Lewis Burkhart, and AUSA Burkhart advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

**Request for Sealing**

36.     I further request this Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant.   I believe sealing these documents is necessary because the information to be seized is relevant to several ongoing investigations, and any disclosure of the information at this time may cause THOMPSON, or others associated

with **Device 1**, **Device 2**, **Target Cell Phone 1,** and **Target Cell Phone 2**, to flee from

prosecution, cause destruction of or tampering with evidence, or otherwise seriously jeopardize

this investigation.    Premature disclosure of the contents of the application, this affidavit, the

attachments, and the requested search warrant may adversely affect the integrity of the

investigation.

_____
Colby J. Panter
Task Force Officer
FBI Portland Division

        Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

  4:59       p.m. on April 28, 2020.

_Youlee Yim You_
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Affidavit of Colby Panter**                                                                          **Page 15**